## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| U.S. Shoring and Equipment Co., a Minnesota corporation, | Court File No. _____ |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT IN SUPPORT OF TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND JURY DEMAND** |
| Wayne R. Agamie, and Efficiency Production, Inc., a Michigan corporation, | |
| Defendants. | |

Plaintiff U.S. Shoring and Equipment Co. ("USSE"), for its Complaint against defendants Wayne R. Agamie and Efficiency Production, Inc. (hereinafter "EPI") states as follows:

### NATURE OF ACTION

By and through this action, USSE seeks temporary and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, and monetary relief. Before becoming employed by USSE, Agamie signed a Confidentiality, Inventions and Noncompetition Agreement (the "Agreement"). On Saturday, March 21, 2009, Agamie abruptly resigned his employment with USSE. Upon information and belief, he did so to become employed by EPI, a competitor of USSE in the Orlando market, and/or to set up a competing business with EPI or with EPI's financing or assistance. Within just four days of Agamie's departure, USSE has already lost business to EPI, upon information and belief, due to Agamie's unfair competitive activities in violation of his Agreement. USSE also has reason to believe that Agamie took USSE's valuable confidential and proprietary business information, and is actively trading on the customer goodwill he was paid to establish on USSE's behalf in the Orlando market. All of

these actions are in direct violation of his Agreement and may very well be in violation of common law and statutory duties he owed and owes to USSE. An injunction is necessary to prevent further irreparable harm to USSE.

## IDENTIFICATION OF THE PARTIES

1.    USSE is a corporation organized and incorporated under the laws of the State of Minnesota with its principal place of business located in Savage, Minnesota. USSE is a wholly owned subsidiary of Road Machinery and Supplies, Co., ("RMS"). RMS is a corporation organized and incorporated under the laws of the State of Minnesota with its principal place of business located in Savage, Minnesota.

2.    Agamie was employed by USSE as a sales representative and later branch manager of USSE's Orlando location from May 31, 2006 to March 23, 2009. Agamie currently resides at 5259 Mill Stream Dr. St. Cloud, Florida 34771.

3.    EPI is a corporation organized and incorporated under the laws of the state of Michigan with its principal place of business in Mason, Michigan. Upon information and belief, it is doing business in the Orlando Florida area under the name Professional Shoring, Inc.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that there exists complete diversity between the parties and the amount in dispute exceeds $75,000.

5.    Venue is proper in this district because defendant Agamie resides in Florida and defendant EPI transacts business and maintains a physical presence within this District. Plaintiff's claims for relief arise in this District because the Agreement's restrictive covenants restrict Agamie's activities here and because a substantial part of the events or omissions giving

2

rise to the claim occurred in the Middle District of Florida. For all these reasons, venue is proper in this District pursuant to 28 U.S.C. §1391(a),(c) and (d).

## FACTUAL BACKGROUND

### I.    General Allegations Relevant to All Claims

6.    USSE was established in 2003 as a distributor of various construction equipment products, including shielding and shoring systems, with 4 offices in Florida and an office in Texas. Construction shielding or shoring usually consists of a trench box (also called a trench shield) which is placed in trench dug during construction to prevent it from collapsing. A trench box consists of two large plates, usually made of steel, which are parallel to the walls of the trench, and horizontal cross-members which hold the two plates apart. After a trench is dug, workers descend into the trench, performing whatever work is necessary, such as laying pipe or telephone lines, welding pipe, or installing valves. The trench box and related trench safety equipment protect these workers. USSE provides trench boxes and other safety equipment for construction sites.

7.    EPI is a manufacturer of trench shielding and shoring systems such as trench boxes and vertical hydraulic shores, and has a national sales and rental distribution network of over 100 stocking dealers. Upon information and belief, it is doing business in Florida under the name Professional Shoring, Inc.

8.    Wayne R. Agamie began his employment with USSE in May 2006 as a sales representative for USSE. In that role, Agamie was responsible for developing USSE's shoring capability, product offerings, selling and renting products, purchasing and managing inventory, developing customer relationships, and investing time in generating goodwill between USSE and its customers.

6017013_2

9.     The core of USSE's revenues is in the repeat business it performs on behalf of its customers. In order to solicit and procure new customers, and to maintain existing customers, USSE has developed and acquired a large volume of valuable and highly technical information that gives it a competitive advantage in the shoring industry. USSE's hiring of defendant Agamie was just one way that it has acquired a competitive advantage in the Orlando market.

10.     This information includes confidential and proprietary customer account data such as financial status, credit and account history, and revenues generated for USSE. It also includes confidential and proprietary information regarding USSE's costs and price estimate projections for these customers. In addition, for each of its customers, USSE maintains cost, value added, profit, profit percentage, and data regarding purchasing patterns, bids, product specifications, box configurations, technical data sheets, hauling rates, suppliers, and business strategies. With this information, a competitor could identify not only USSE's customers and their buying and renting practices and requirements, but also USSE's profitability on individual accounts.

11.     USSE has also developed a substantial amount of goodwill in its customers by maintaining close working relationships with many of them. These relationships, and the goodwill established by USSE's representatives who maintain those relationships, are essential to the maintenance of USSE's repeat customer base, the key to its success in the shoring business. USSE's customers' loyalty to the sales people with whom they work is very high, as is the amount of inventory USSE keeps on hand to serve its customer needs. Therefore, USSE invests heavily in the relationships the sales people establish with their customers. As a result, non-compete agreements are standard industry practice to protect the significant investment USSE makes in establishing goodwill.

II.    <u>Allegations Concerning The Substantive Counts</u>

   A.    <u>Defendant Agamie's Employment with USSE and Relationship with USSE's</u>
         <u>Customers</u>

   12.    Defendant Agamie was hired by USSE as a sales person on May 31, 2006. USSE
hired Agamie to start its Orlando, Florida branch office and invested significant time and money
into Agamie's employment. First, when USSE hired Agamie, he was subject to a non-competition
agreement with his former employer. In order to honor that non-competition agreement, USSE paid
Agamie for one year not to engage in any activities that would violate his obligations to, or interfere
with, the contract he had with his former employer. When the period of restraint on his former
employer's non-competition expired, Agamie became a fulltime salesperson and branch manager on
USSE's behalf. USSE specifically hired and paid Agamie for his customer relationships in the
Orlando area. In order to protect that investment, USSE required Agamie to sign the Agreement
that is the subject of this action. Agamie signed the Agreement before Agamie began his
employment with USSE.

   13.    In addition, USSE paid Agamie to spend time in RMS' main offices in Minnesota to
familiarize himself with USSE's and RMS' products, processes, materials, and employees. Agamie
also met with management at its annual planning meeting to discuss business strategy, including
USSE's strategy in the Orlando, Florida market. At that meeting, Agamie was involved in a
number of management decisions about the establishment of USSE in the Orlando market. For
example, Agamie participated in the USSE corporate decisions to locate a new facility, regarding
the hiring of certain personnel and the establishment of a separate division of USSE for Agamie to
grow. This information and training provided Agamie with the tools he needed to continue to
develop his pre-existing customer relationships and goodwill on USSE's behalf. USSE invested
heavily in Agamie's relationships. USSE leveraged its relationships with exclusive suppliers to

engineer and build products to suit USSE's customers served by Agamie. USSE made an enormous investment in inventory based on Agamie's assurances that he would remain at the company and market and sell the products.

14.    At the time Agamie abruptly quit his employment on March 21, 2009, he was working actively with all of USSE's customers. In 2008, Agamie was responsible for a stream of revenue of more than $1.3 million. USSE supported Agamie by investing in the personal relationships he had with his customers and to establish new customer relationships during his employment. For example, USSE paid Agamie to entertain, to go on boating and fishing trips, and to otherwise market to these customers to maintain and create new goodwill with them. Agamie's personal relationships with USSE's customers was the basis of USSE's goodwill in the Orlando shoring industry marketplace. With the assurance that its investment was protected by the Agreement, USSE had the confidence to significantly invest in inventory to support Agamie's sales efforts and to provide for his livelihood. By Agamie's own estimate, he controlled approximately half of the shoring market in the Orlando area.

**B.    Agamie's Confidential Information, Inventions and NonCompetition Agreement with USSE**

15.    Prior to being employed, defendant Agamie was specifically advised that, as a condition of employment with USSE, he would be required to sign a Confidential Information, Inventions and Non-Competition Agreement.

16.    On May 31, 2006, defendant Agamie executed a Confidential Information, Inventions and Noncompetition Agreement with USSE (the "Agreement"). The terms of this Agreement were fully reviewed and explained to Agamie before he signed it. Agamie was given a copy of the Agreement to take home and review before he signed it. A copy of the Agreement signed by Agamie is attached to the Complaint as Exhibit A. David Johnson, the Chief Operating

Officer of RMS, signed the Agreement on USSE's behalf. Johnson is also USSE's Chief Operating Officer.

17.    Agamie agreed that, during the period of his employment and thereafter for a period of one year he would not:

> enter the employ of any person firm, or corporation engaged or planning to itself, through any of its branches or divisions or through any subsidiary or affiliate, in any products which compete with those rented, sold or serviced by the company, within 100 miles of Orlando, Florida (the "Territory") . . . Nor shall [you] engage, during any such time period, directly or indirectly, as principal, agent, employee or financier in any such business in competition with the company in the Territory.

18.    The Agreement also provides that Agamie would not, for a period of 12 months following the termination of his employment for any reason "solicit any employee of the Company to join a competitor of the Company or solicit any customer of the Company to cease conducting business with the Company and its affiliates."

19.    To protect USSE's confidential information, its goodwill in the shoring marketplace and its investment in the training of its employees, USSE's Agreement provides, and Agamie acknowledged, inter alia that:

> the Proprietary Information (as hereinafter defined) developed or utilized by the Company constitutes its carefully guarded trade secrets and is of great value to the Company. For purposes of this Agreement, "Proprietary Information" shall mean any and all proprietary and confidential information of the Company, including, without limitation, financial statements, budgets, customer information, customer lists, direct mailing lists, business plans, pricing, channels of distribution, product information, processes, technologies, services and all other similar information whether related specifically to the Company's business or to the Company as a whole. The parties further recognize that the services to be performed by Employee are special and unique and that Employee's employment is of such a character that Employee will acquire knowledge of the Proprietary Information, which, if used by or divulged to a competitor, would seriously prejudice the Company's interests. Employee, therefore, acknowledges and declares that disclosures thereof to Employee will be in strict confidence and that Employee shall keep the same confidential and shall not divulge any of the same to anyone other than the Company, except as reasonably required in the performance of Employee's duties hereunder, either during or after the termination of Employee's employment, except with the Company's express prior written consent, unless

6017013_2

at the time of divulgence, the same will be demonstrably in the public domain, without having been caused, directly or indirectly, by any action or inaction of Employee.

20.    On the day Agamie resigned or shortly thereafter, USSE learned that Agamie was establishing a competing shoring business in the Orlando marketplace. USSE further learned that Agamie was doing so under the employ, or with the collaboration and financial assistance of EPI. On March 24, 2009, (as soon as USSE learned of Agamie's plans), USSE sent Agamie a letter to remind him that he had previously signed the Agreement and that his proposed relationship with EPI was a violation of that Agreement. USSE informed Agamie if he went to work with or on behalf of or in collaboration with EPI, USSE would pursue its rights under the Agreement. A copy of the letter USSE sent to Agamie is attached as Exhibit B to this Complaint.

**C.    Agamie's Violation of the Agreement**

21.    In February 2008, with Agamie's advice and assistance, USSE signed a 3-year, triple net lease on a new facility in Orlando as part of an overall expansion strategy to gain a larger share of the Orlando shoring market. Agamie hired Dan Payne, his friend and former co-worker, away from another competitor in the Orlando market. Agamie claimed that he needed Payne's skill set as a yardman and rental coordinator to successfully grow USSE's business. At the time it hired him, USSE informed Payne that signing a non-competition agreement was a requirement of his employment. Agamie was responsible for having Payne sign USSE's non-compete upon hiring. Upon information and belief, Agamie had Payne sign an agreement.

22.    Payne also had a non-competition agreement with his former employer. In order to comply with the terms of that agreement, USSE limited Payne's activities so that he did not violate the restrictions to which he had agreed. For a year beginning in February 2008, USSE did not permit Payne to solicit customers on USSE's behalf in order to honor the obligations of Payne's agreement with his former employer.

6017013_2

23.    As Payne's period of non-restraint was expiring in February 2009, USSE offered Payne a position as a salesman, subject to his signing a second USSE non-competition agreement since the original could not be located. Agamie was again responsible for ensuring that Payne sign the new non-compete. Upon information and belief, Agamie either failed to have Payne sign the new agreement, or Agamie had him sign the agreement, but took it with him when he left or destroyed the document.

24.    In mid-2008, as part of the growth plan for USSE's Orlando branch, Agamie started promoting Mike Ciotta, a salesperson working for a competing shoring business in Orlando, as a potential USSE employee. At the time Payne's non-competition obligations were expiring, Agamie pressed USSE management to aggressively pursue hiring Ciotta. As with its previous hires, USSE was prepared to honor the non-competition obligations that Ciotta had with his previous employer. On February 19, 2009, USSE made an offer of employment to Ciotta, expressly noting that USSE was prepared to honor his existing non-competition agreement. A copy of Ciotta's employment offer letter is attached as Exhibit C to the Complaint. Ciotta orally accepted the offer in a conversation with RMS and USSE President Michael M. Sill, II, and agreed upon a March 23, 2009 start date. By Agamie's account, Ciotta had significant contacts within the Orlando shoring marketplace.

25.    On Saturday, March 21, 2009, Agamie sent an e-mail to RMS' Chief Operating Officer, David Johnson, stating that he was resigning immediately. A copy of the email is attached as Exhibit D to the Complaint.

26.    Johnson then called Payne, USSE's rental coordinator, to inform him of Agamie's decision. Payne was already aware that Agamie had resigned. In fact, Agamie had called Payne to the office on Saturday, March 21, told him he was leaving, and proceeded to pack up a box

that contained some papers which included, according to Payne, USSE "literature and quotes." On March 23, 2009, Payne emailed his resignation to Johnson. A copy of Payne's email is attached as Exhibit E to the Complaint.

27.    On Saturday, March 21, 2009, Johnson also called Ciotta to find out if he knew what was going on with Agamie. Ciotta told Johnson he had no idea. Ciotta did not begin work for USSE on March 23, 2009, as he had previously agreed. Upon information and belief, Ciotta has begun working with Agamie on EPI's behalf. In addition, upon information and belief, Agamie has shared USSE's confidential, proprietary and trade secret information about, *inter alia*, USSE's market strategy with Ciotta. Finally, upon information and belief, Agamie and Ciotta conspired to take USSE's confidential, proprietary and trade secret market strategy to EPI for their own benefit and/or for the benefit of EPI.

28.    On March 24, 2009, USSE notified Kenneth Forsberg, President of defendant EPI, that Agamie had signed the Agreement on May 31, 2006. USSE advised EPI that it viewed any relationship between EPI and Agamie as a violation of the Agreement and warned that, now that EPI had notice of the Agreement, USSE expected EPI to sever its relationship with Agamie. A copy of the March 24, 2009 correspondence is attached to the Complaint as Exhibit C. USSE did not receive a response to this letter.

29.    On Wednesday, March 25, 2009, RMS COO Johnson went to the site of Lane Construction, a longtime USSE customer. Until that time, USSE had provided shoring equipment to Lane Construction on a large project, representing significant revenues to USSE— nearly 15% of Agamie's 2008 revenue. Johnson observed that Lane Construction was, as of that day, using EPI's equipment rather than USSE's. Steve Fowler, USSE's heavy equipment manager, called his contact at Lane Construction to inquire why Lane Construction was now

using EPI for its shoring needs. Fowler was informed that EPI's salesman had said that USSE was going out of business. Upon information and belief, the EPI salesman was defendant Agamie or Mike Ciotta.

30.    USSE has also learned that approximately two weeks before Agamie resigned from his employment with USSE, he contacted Hubbard Construction, a vendor of concrete pilings that are used in the shoring industry for storing trench boxes. Agamie had several concrete pilings delivered to the yard where he has now set up a competing business. Hubbard Construction informed USSE that it understood these pilings were for USSE's use. Upon information and belief, Agamie did not inform Hubbard Construction that this equipment was for a new shoring operation in the Orlando area. A USSE employee observed Agamie working at the new site before he left his employment with USSE, while he was still on USSE's payroll.

31.    Upon information and belief, Agamie either stopped working or slowed down his business activities on USSE's behalf in the weeks before he abruptly resigned. For example, the day before Agamie resigned, USSE employee Steve Fowler asked him when he had last called on Posen Construction, one of USSE's largest shoring jobs in the Orlando area. Prior to that time Agamie had spent significant amounts of money entertaining Posen Construction by taking personnel on boating and fishing trips. Agamie responded that he had not contacted Posen recently, and did not react when he was informed that the Posen Construction site was observed to have a number of products from a competitor in the Orlando shoring market—the very competitor for whom Ciotta was working before he agreed to USSE's offer of employment.

32.    Upon information and belief, Agamie physically took with him copies of printed documents containing confidential and proprietary information about USSE's customers, phone records, customer lists, job-letting data, and quote sheets.

6017013_2

33.     All conditions precedent to enforcement of the Agreement have been performed, satisfied or otherwise fulfilled.

34.     Plaintiff has engaged its attorneys to represent it in this action and is obligated to pay them a reasonable fee for services.

## COUNT ONE
## CLAIM FOR INJUNCTIVE RELIEF

35.     USSE seeks temporary and permanent injunctive relief against Agamie and EPI as a result of Agamie's violations of the Confidentiality, Inventions and Noncompetition Agreement (the "Agreement") he signed with USSE when he began his employment. USSE has no adequate remedy at law as money damages will not compensate USSE if Agamie continues to violate his noncompete covenant and if Agamie and EPI continue to misuse USSE's valuable confidential and proprietary business information and actively trade on USSE's customer goodwill to divert and steal USSE's customers.

36.     USSE is likely to succeed on the merits of this lawsuit because Agamie's conduct is illegal and in violation of the Agreement, because EPI is aiding and abetting Agamie's breaches, and because USSE is entitled to protect its legitimate business interests as detailed above.

37.     USSE has suffered and will continue to suffer irreparable injury if an injunction is not entered against Agamie and EPI restraining them from using USSE's confidential and proprietary information and stealing USSE's customers and employees

38.     USSE restates and realleges paragraphs 1-34 of its Complaint.

39.     The conduct and actions of both Agamie and EPI, as described above, constitute breaches of the Agreement, as well as Florida's law.

40.     By virtue of the conduct and actions of both Agamie and EPI, USSE has demonstrated that a balancing of the equities favors issuance of a temporary and permanent injunction against Agamie and EPI because the harm faced by USSE outweighs any harm to Agamie and EPI if the restrictive covenant in the Agreement is enforced. The geographic scope and temporal restrictions are reasonable and necessary to protect USSE's legitimate business interests.

41.     Unless Agamie is enjoined from the foregoing conduct, USSE will suffer irreparable harm in the form of (a) disclosure of USSE's valuable confidential and proprietary business information; and (b) misuse of USSE's customer goodwill.

## COUNT TWO
## BREACH OF CONTRACT – NONCOMPETITION AGREEMENT

42.     This count states a claim for damages against Agamie for violation of noncompetition, non-solicitation and confidential information provisions of the Agreement he signed with USSE.

43.     USSE restates and realleges paragraphs 1-34 and 39-41 of its Complaint.

44.     The Agreement between USSE and Agamie is an enforceable contract. The noncompetition, nonsolicitation and confidential information provisions contained in the Agreement, among others, are supported by adequate consideration.

45.     USSE performed all of its obligations under the Agreement by employing Agamie and providing him all compensation and benefits due under the Agreement.

46.     Agamie has breached or will breach the Agreement.

47.     Agamie's breach of the Agreement has damaged and will continue to damage USSE, which has suffered, and will continue to suffer, irreparable harm that justifies enjoining Agamie from his illegal and improper actions, along with all other remedies available to USSE.

As a result of Agamie's illegal and improper breach of contract, USSE has also suffered or will suffer monetary damages that exceed $75,000, exclusive of interest and costs.

## COUNT THREE
## BREACH OF DUTY OF LOYALTY AGAINST AGAMIE

48.    This count states a claim for damages against Agamie for the illegal and improper conduct in which he engaged before he left his employment with USSE.

49.    USSE restates and realleges paragraphs 1-34, 39-41, and 44-47 of its Complaint.

50.    As an employee of USSE, defendant Agamie owed a duty of loyalty to act solely for USSE's benefit in all matters connected to his employment.

51.    Upon information and belief, Agamie's conduct, including but not limited to, conspiring to begin a competing business, performing work at the site of the competing business he has now established, misleading customers and vendors about USSE's business plans, and soliciting Lane Construction's business to follow him to competitive employment before he left his employment with USSE, was a breach of that duty of loyalty.

52.    For this breach of the duty of loyalty to USSE, the Company is entitled to an award of compensatory damages against Agamie that exceed $75,000, exclusive of interest and costs.

## COUNT FOUR
## MISAPPROPRIATION OF TRADE SECRET INFORMATION (STATUTORY)

53.    This count states a claim against Agamie and EPI for violations of the Florida Uniform Trade Secrets Act, Florida Statutes §§ 688.001 et seq.

54.    USSE restates and realleges paragraphs 1-34, 39-41, 44-47, and 50-52 of its Complaint.

55.    Agamie has a duty under the Florida Uniform Trade Secret Act and the Agreement to protect USSE's valuable confidential and proprietary business information.

56.    USSE expended reasonable efforts to protect the secrecy of its valuable proprietary and confidential business information.

57.    USSE spent considerable sums of money acquiring, maintaining, and guarding its confidential information.

58.    There is a substantial threat that Agamie will inevitably disclose USSE's confidential and proprietary information in an effort to steal away USSE's customers.

59.    Agamie willfully and maliciously misappropriated USSE's valuable confidential and proprietary information for his and EPI's economic and financial interest, all to the detriment of USSE.

60.    Agamie has breached or will breach his duty to maintain the secrecy of USSE's confidential information in violation of the Florida Uniform Trade Secrets Act, Florida Statutes §§ 688.001 et seq.

61.    As a direct and proximate result of Agamie's wrongful misappropriation of trade secrets, USSE is suffering immediate and irreparable injury, harm and damage, and will continue to suffer injury, harm and damage, unless and until Agamie is restrained.

62.    As a further direct and proximate cause of Agamie's wrongful misappropriation of trade secrets, USSE have suffered or will suffer damages in an amount which that is not presently ascertainable, but which shall be proved at the time of trial.

## COUNT FIVE
## UNFAIR COMPETITION

63.    This count states a claim for damages against Agamie for common law unfair competition.

64.     USSE restates and realleges paragraphs 1-34, 39-41, 44-47, 50-52, and 55-62 of its Complaint.

65.     Agamie's conduct and actions, as described above, constitute unfair competition in violation of the common law.

66.     Agamie's unfair competition has also caused USSE to suffer or will cause USSE to suffer monetary damages that exceed $75,000, exclusive of interest and costs.

## COUNT SIX
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

67.     This count states a claim against EPI and Agamie for (1) EPI's interference with Agamie's contract with USSE; and (2) Agamie's and EPI's interference with USSE's contractual relations with its customers.

68.     USSE restates and realleges paragraphs 1-34 of its Complaint.

69.     Defendant EPI's continued employment of Agamie with full knowledge of his unlawful acts, and defendant EPI's refusal to take appropriate remedial action, (and, upon information and belief, its agreement to defend and indemnify Agamie), is intentional interference with the non-competition, non-solicitation, and non-disclosure obligations contained in Agamie's Agreement with USSE.

70.     Defendant Agamie has intentionally, willfully and wrongfully interfered with USSE's prospective economic advantage and existing business relationships by soliciting business for the benefit of EPI.

71.     By intentionally causing Agamie to solicit USSE's customers, defendant EPI is tortiously interfering with the business relationships USSE have with its customers.

72.     Agamie's and EPI's conduct was and is not justified, privileged or excusable.

73. Agamie's and EPI's wrongful conduct has also caused USSE to suffer or will cause USSE to suffer monetary damages that exceed $75,000, exclusive of interest and costs.

## COUNT SEVEN

## CONVERSION AGAINST AGAMIE

74. This count states a claim against Agamie for information and property which he has, upon information and belief, taken from USSE.

75. USSE restates and realleges paragraphs 1-34, 39-41, 44-47, 50-52, 55-62 and 69-73 of its Complaint.

76. Upon information and belief, defendant Agamie has tortiously converted documents, information and other property belonging to USSE.

77. USSE has suffered substantial damages because of Agamie's wrongful retention and use of USSE's property.

## COUNT EIGHT
## UNJUST ENRICHMENT AGAINST EPI

78. This count states a claim against EPI for amounts it has been unjustly enriched as a result of its own and Agamie's tortuous and illegal conduct.

79. USSE restates and realleges paragraphs 1-34, 39-41, 44-47, 50-52, 55-62, 69-73, and 76-77 of its Complaint.

80. By virtue of the benefits EPI has received because of the confidential and proprietary information Agamie has disclosed to it, EPI has been unjustly enriched.

81. By virtue of the benefits EPI has received because of the customer goodwill Agamie has taken from USSE, EPI has been unjustly enriched.

82. EPI's unjust enrichment has caused USSE to suffer or will cause USSE to suffer monetary damages that exceed $75,000, exclusive of interest and costs.

6017013_2

## COUNT NINE
## CIVIL CONSPIRACY AGAINST EPI AND AGAMIE

83.     This count states a claim against Agamie and EPI for their concerted unlawful conduct.

84.     USSE restates and realleges paragraphs 1-34, 39-41, 44-47, 50-52, 55-62, 69-73, 76-77, and 80-82 of its Complaint.

85.     Defendants have combined with each other and acted in concert with the common purpose of causing: the breach of Agamie's duty of loyalty to USSE, the breach of Agamie's contract with USSE, the misappropriation of USSE's confidential and proprietary information and trade secrets, and the tortious interference with USSE's business and contractual relations.

86.     Defendants' combination and actions as set forth herein was with a common purpose to accomplish an unlawful act or to accomplish a lawful act by unlawful means, amounting to a civil conspiracy.

87.     As a direct and proximate result of defendants' civil conspiracy, USSE has suffered monetary damages that exceed $75,000, exclusive of interest and costs.

### PRAYER FOR RELIEF

WHEREFORE, USSE prays that the Court grant the following relief.

      i.   Temporary and permanent injunctions enjoining Agamie from violating and EPI from inducing Agamie to violate the contract attached hereto as Exhibit A;

     ii.   Temporary and permanent injunctions enjoining defendant Agamie, and defendant EPI and its officers, agents, servants, employees and other persons in concert or participation with them, from soliciting or continuing to solicit customers or prospective customers or clients of USSE for a period of 12 months from the date of an order of this Court;

6017013_2

   iii.  An accounting of all customers solicited, contacted, and/or from whom accounts have been transferred to EPI or to its affiliates as a result of, directly or indirectly, any information, knowledge or activity of defendant Agamie;

   iv.  Awarding a constructive trust in favor of USSE and against EPI impounding and prohibiting EPI from directly or indirectly retaining possession of the funds it has wrongfully diverted from USSE and paying the same over to USSE;

   v.  In the alternative, if a constructive trust will not fully rectify the harm USSE has suffered, damages in an amount to be determined at trial for the wrongful conduct of the defendants;

   vi.  Awarding USSE its costs and disbursements and reasonable attorneys' fees incurred in connection with this action; and

   vii.  For such other and further relief as the Court deems just and equitable.

Dated:  April 1, 2009

*Stephen O. Cole*

Stephen O. Cole
Florida Bar No. 0198250
Macfarlane Ferguson & McMullen
P.O. Box 1669 Clearwater, FL 33757
625 Court Street Clearwater, FL 33756
Main: (727) 441-8966
Direct: (727) 444-1415
Fax: (727) 461-7970

Daniel L. Palmquist
Minnesota Bar No. 217694
LEONARD, STREET AND DEINARD
Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, MN  55402
Telephone:  (612) 335-1500
Facsimile:  (612) 335-1657

**ATTORNEYS FOR PLAINTIFFS**

6017013_2

## VERIFICATION OF COMPLAINT

Michael M. Sill, II, declares under penalty pursuant to 28 U.S.C. § 1746 that:

1.    I am the President and the Chief Executive Officer of Plaintiff, Road Machinery & Supplies, Inc. and U.S. Shoring & Equipment, Co., and make this Affidavit in said capacity.

2.    The facts set forth in Plaintiff's Complaint are within my personal knowledge, except for those facts which are stated to be upon information and belief, which facts I believe to be true.

3.    If sworn as a witness, I can testify, competently as to those facts.

_____
Michael M. Sill, II

## DEMAND FOR JURY TRIAL

Plaintiff USSE hereby demands a jury trial on all issues properly triable thereby.


Dated:  April 1, 2009

*Stephen O Cole*
Stephen D. Cole
Florida Bar No. 0198250
Macfarlane Ferguson & McMullen
P.O. Box 1669 Clearwater, FL 33757
625 Court Street Clearwater, FL 33756
Main: (727) 441-8966
Direct: (727) 444-1415
Fax: (727) 461-7970


Daniel L. Palmquist
Minnesota Bar No. 217694
LEONARD, STREET AND DEINARD
Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657

**ATTORNEYS FOR PLAINTIFFS**