UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

U.S. Shoring and Equipment Co., a
Minnesota corporation,                           Case No.: 6:09-cv-598-ORL-35 GJK

        Plaintiff,

v.

Wayne R. Agamie, Phillip Wilburn, Daniel
Payne, and Efficiency Production, Inc., a
Michigan corporation,

        Defendants.
_____/

**DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF ATTORNEY-CLIENT COMMUNICATIONS
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF**

    Defendants, Wayne R. Agamie, Daniel Payne, and Efficiency Production, Inc. ("Efficiency") (referred to collectively throughout as "Defendants"), by and through their undersigned counsel, submit the following Motion in Limine to Exclude Evidence of Attorney-Client Communications pursuant to Florida Rules of Evidence section 90.502[1] and Federal Rules of Evidence 403.

**MEMORANDUM OF LAW**

**I.    Introduction**

    Phillip Wilburn ("Mr. Wilburn") was employed by Plaintiff as an outside salesperson from June 12, 2006 until March 23, 2009.[2] On March 23, 2009, Mr. Wilburn resigned from Plaintiff's service in order to become employed by Efficiency. However, Mr. Wilburn was

---

[1] *See Milinazzo v. State Farm Insurance Co.*, 247 F.R.D. 691, 696 (S.D. Fla. 2007) ("Florida law governs application of the attorney-client privilege in a federal diversity action.").

[2] The factual background summarized herein can be found in Defendants' Motion to Strike the Affidavit of Phillip Wilburn (Doc. 79). For sake of brevity, Defendants incorporate the factual background and record citations found in Defendants' Motion to Strike the Affidavit of Phillip Wilburn as if fully set forth herein.

frustrated with Efficiency from the start because he felt he was owed a substantial signing bonus. Within a matter of days, Mr. Wilburn was flip-flopping about which company he wanted to work for and taking meetings with his former employer, Plaintiff's President and CEO, Michael Sill ("Mr. Sill"). On March 31, 2009, Mr. Wilburn met with Mr. Sill to discuss Mr. Wilburn's options for returning to work for Plaintiff and, as a result, Mr. Sill made Mr. Wilburn a written offer of re-employment on April 2, 2009. However, at that time, Mr. Wilburn decided to stay on board with Efficiency.

Then, in early April, 2009, this litigation ensued. Ultimately, Mr. Wilburn, Wayne Agamie and Daniel Payne were each sued as employees of Efficiency and as individuals, with their employer, Efficiency, being sued in its capacity as a corporation. As promised, Efficiency provided a joint defense for each of the Defendants by hiring attorney Michael J. Furbush. It was during this time period that Mr. Wilburn's infidelities to Efficiency began.

Mr. Wilburn missed more days than he actually worked. When he did show up, Mr. Wilburn performed poorly. Because Mr. Wilburn was allegedly dealing with some personal issues, Efficiency allowed Mr. Wilburn to take an extended leave of absence and continued to provide for his defense with respect to this action.

Fearful that he was going to be fired by Efficiency for his lack of performance, Mr. Wilburn began having secret communications with Mr. Sill in August of 2009. Plaintiff's attorney, Daniel Palmquist, was present during some of these communications, though there is no evidence that he participated in them. Over the course of these on-going conversations, which also included a visit to Plaintiff's headquarters in Minnesota, Mr. Wilburn tried to ingratiate himself with Mr. Sill by divulging attorney-client communications between the

Defendants and their trial counsel as well as providing Efficiency's confidential documents and information.

These indiscretions came to light when Defendants' received Plaintiff's responses to one of its discovery requests, which included Mr. Sill's detailed notes chronicling each conversation he had with Mr. Wilburn. This all occurred while Plaintiff's claims against Mr. Wilburn were still being jointly defended by Efficiency's counsel.

On September 11, 2009, upon realizing that the attorney-client privilege had been breached repeatedly by Mr. Wilburn, Mr. Furbush moved to substitute counsel on behalf of Mr. Wilburn. The motion was granted on September 14, 2009.

Subsequently, Mr. Wilburn resigned from his employment with Efficiency. Afterward, Plaintiff paid Mr. Wilburn $11,000 in return for an October 12, 2009 affidavit favoring Plaintiff's litigation positions, which overtly contradicted Mr. Wilburn's previous deposition testimony.[3] As a result of Mr. Wilburn's cooperation with Plaintiff, Plaintiff entered into a Settlement Agreement with Mr. Wilburn, dismissing him from the lawsuit.

Mr. Wilburn's unauthorized conversations with Plaintiff are inadmissible at trial as attorney-client communications. Mr. Wilburn repeatedly divulged information shared between Defendants' and Defendants' counsel as well as confidential Efficiency documents and information. Further, these conversations should be excluded because, under the Federal Rules of Evidence 403, their prejudicial value outweighs their relevance or probative value. As such, Plaintiff should be precluded from introducing any evidence, offering any explanation, or making any argument to the jury regarding any attorney-client communications.

---

[3] *See* Defendant's Motion to Strike the Affidavit of Phillip Wilburn (Doc. 79).

**II.     Pursuant to Florida Rules of Evidence section 90.502, Plaintiff should be precluded from introducing any evidence, offering any explanation, or making any argument to the jury regarding any attorney-client communications.**

A client has a privilege to refuse to disclose, *and to prevent any other person from disclosing*, the contents of confidential communications when those communications were made in the rendition of legal services.  *See* West's F.S.A. § 90.502(2) (emphasis added).  In other words, any communication to which the attorney-client privilege attaches is "absolutely immune from disclosure."  *United Services Automobile Association v. Roth*, 859 So. 2d 1270, 1271 (Fla. 4th DCA 2003).  The purpose of this privilege is to "promote freedom of consultation between client and legal advisors without apprehension of subsequent compelled legal disclosure." *International Tel. & Tel. Corp. v. United Tel. Co. of Florida*, 60 F.R.D. 177, 185 (M.D. Fla. 1973).

Under Florida law, to assert the attorney-client privilege a corporation must demonstrate: (1) the communication would not have been made but for the contemplation of legal services, (2) the employee making the communication did so at the direction of his or her corporate superior, (3) the superior made the request of the employee as part of the corporation's efforts to secure legal advice or services, (4) the content of the communication relates to the legal services being rendered and the subject matter of the communication is within the scope of the employee's duties, and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.  *See Brickell Associates v. Q.B.E. Insurance Co.*, 253 F.R.D. 697, 699 (S.D. Fla. 2008).  The attorney-client communications Defendants seek to exclude from evidence meet this standard.

Specifically, Defendants seek to exclude any communications between Defendants' counsel, Michael J. Furbush, and Efficiency's former employee and former co-defendant, Phillip

Wilburn. When Plaintiff sued Defendants, Efficiency hired Michael J. Furbush, Esq. of Roetzel & Andress to defend against Plaintiff's claims. Mr. Furbush represented Efficiency and, at Efficiency's direction, Wayne R. Agamie, Phillip Wilburn and Daniel Payne as employees of Efficiency as well as individual defendants. In this effort to secure legal services, Efficiency requested Mr. Wilburn to communicate with Mr. Furbush regarding the subject matter of the lawsuit, to the extent of Mr. Wilburn's involvement and duties as an employee.

Mr. Wilburn initially cooperated with Efficiency's request. However, after flip-flopping several times about his decision to leave Plaintiff's employment to join Efficiency, Mr. Wilburn began having secret communications with the Plaintiff regarding the subject matter of this lawsuit.[4] Through discovery, it has become apparent that Mr. Wilburn divulged attorney-client communications between Defendants and Defendants' counsel to Plaintiff's President and CEO, Michael Sill.[5] It has also become evident that Mr. Wilburn has, without authorization, provided Plaintiff with confidential documents belonging to Efficiency.[6]

Wilburn's disclosures to Plaintiff were numerous: privileged information from group attorney-client conferences; Efficiency's litigation strategy; confidential Efficiency quotes; Efficiency's internal documents; Efficiency customer information. All privileged or confidential, all wrongfully disclosed by Mr. Wilburn to Plaintiff.[7] Such communications occurred repeatedly without Defendants' knowledge or permission, and eventually led to a settlement agreement between Plaintiff and Mr. Wilburn, by which Plaintiff paid Mr. Wilburn $11,000 in return for an affidavit against Defendants that blatantly contradicted Mr. Wilburn's

---

[4] Sill Dep. 6:10-23, 59:4-62:8.
[5] Sill Dep. 59:4-62:8.
[6] Sill Dep. 177:13-185:20.
[7] See Mr. Sill's notes, bates numbered PL09638-PL09669.

prior deposition testimony.[8] Further, Plaintiff has admitted that Plaintiff's counsel, Daniel Palmquist, was at least present for some of these underhanded communications.[9]

These breaches of the attorney-client privilege could have provided grounds for disqualification of Plaintiff's counsel. For example, pursuant to Florida Rule of Professional Conduct 4-4.2(a), "a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter…" Taking it one step further, Florida Rule of Professional Conduct 4-8.4(a) states that "[a] lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." Plaintiff's ex parte communications with Mr. Wilburn created the appearance of impropriety and were prohibited because Mr. Wilburn possessed privileged information specifically relating to the instant case. *See Rentclub, Inc. v. Transamerica Rental Finance Corp.*, 811 F. Supp. 651, 653 (M.D. Fla. 1992, *aff'd*, 43 F.3d 1439 (11th Cir. 1995). Although the Florida Rules of Professional Conduct do not contain an express prohibition against the appearance of impropriety, Florida courts do not allow an attorney to continue representing a client when to do so creates such an impression. *See State Farm Mutual Auto. Co. v. K.A.W.*, 575 So. 2d 630 (Fla. 1991).

Though it was a close call, Defendants elected not to burden the parties or the Court with a mini-trial on a possible disqualification issue. Instead, Defendants submit this Motion to preclude any communications between Mr. Furbush and Mr. Wilburn from being allowed as substantive evidence in this case. If this type of evidence were to be introduced during trial, the Court could end up facing a situation where Mr. Furbush has to cross-examine Mr. Wilburn with

---

[8] Upon realization of the breaches of the attorney-client privilege, Mr. Furbush filed an Unopposed Motion to Substitute Counsel for Mr. Wilburn on September 11, 2009. On September 14, 2009, this Court entered an Order granting the Motion and substituting Steven G. Burton, Kelly Holbrook and Mark M. Barber of the law firm Broad & Cassel as Mr. Wilburn's new counsel.
[9] Sill Dep. 56:22-58:13.

respect to their privileged attorney-client communications or even a situation where Mr. Furbush has to become a witness himself to rebut Wilburn's testimony regarding their communications.

The privilege of non-disclosure between attorney and client attaches to a conversation or communication itself, and protects it from exposure no matter whose hands it may be in. *See Proffitt v. State*, 315 So. 2d 461, 464 (Fla. 1975). Further, Mr. Wilburn, as a former employee of Efficiency, was not authorized to disclose communications with trial counsel to Plaintiff or its attorneys. In fact, this Court has previously held that the attorney-client privilege belongs to the corporation and may not be waived by a former employer. *See In re Home Shopping Network, Inc. Securities Litigation*, 1989 WL 201085, *1 (M.D. Fla. 1989). "Former employees of [the corporation] are prohibited from discussing any attorney/client communications belonging to [the corporation]." *Id.* "This includes any privileged communications or contacts the former employee has had with any attorney for [the corporation]…" *Id.* Thus, Mr. Wilburn, as a former employee of Efficiency, was prohibited from divulging attorney-client communications belonging to Efficiency.

Nevertheless, not only did Mr. Wilburn disclose attorney-client communications and confidential information he was unauthorized to disclose, but Mr. Wilburn did so with the intent to get himself off of the hook with respect to this litigation and to curry favor with Plaintiff in hopes of regaining employment in the future. Not to mention the fact that all of this deceitful activity occurred while Mr. Wilburn was still being jointly defended by Efficiency's counsel. Under Florida Rule of Evidence section 90.502, which prevents the disclosure of privileged communications between attorneys and their clients, any evidence of such communications is inadmissible and should be excluded from evidence in this case.

**III.   Pursuant to Federal Rules of Evidence 403, Plaintiff should be precluded from introducing any evidence, offering any explanation, or making any argument to the jury regarding any attorney-client communications.**

Exclusion of evidence is warranted if the evidence proffered is irrelevant. *See* Fed. R. Evid. 402. Pursuant to Fed. R. Evid. 401, relevant evidence is defined as evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The Advisory Committee's Note to Rule 401 adds that "[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Further, Federal Rule of Evidence 403 provides,

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

If evidence is likely to confuse or mislead the jury with the prejudice substantially outweighing any probative value, it should be excluded. Fed. R. Evid. 403; *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1218 (Fed. Cir. 2002) (district court rightfully excluded testimony that would be confusing to the jury pursuant to FRE 403). Also, relevant evidence may be excluded if it is likely to have an unduly prejudicial effect on the jury. *U.S. v. Chapin*, 515 F.2d 1274, 1284 (D.C. Cir. 1975). Ultimately, the trial court has broad discretion to exclude evidence under Federal Rule of Evidence 403. *Noel Shows, Inc. v. U.S.*, 721 F.2d 327, 330 (11th Cir. 1983).

Evidence or argument regarding attorney-client communications is not material to Plaintiff's claims. Such evidence would not have a tendency to prove or disprove whether Defendants' are liable for the claims asserted against them. Moreover, the evidence would not

assist the jury in considering the issues, as the opinions and advice of Defendants' counsel have no bearing on the issues of this case. Thus, the evidence has no relevance with respect to the issues and should be excluded from the jury's consideration at trial under Federal Rules of Evidence 402.

Given the marginal relevance of the evidence, the factors set forth in Federal Rule of Evidence 403 also favor exclusion. Rule 403 authorizes the Court to exclude evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay , or considerations of waste of time. Fed. R. Evid. 403.

In this case, there is a real danger that the admission of evidence of privileged attorney-client communications will result in unfair prejudice to Defendants, confusion of the issues and undue delay. First, knowledge of such communications would only confuse the jury and lead them away from the material facts at hand. Next, the jury may also be swayed by the legal opinions of Defendants' counsel and may improperly consider these communications in deciding the liability, if any, of Defendants. Lastly, admission of evidence of attorney-client communications would result in undue delay.

As frequently expressed, conflict concerns arise when an attorney must prepare a case against, cross-examine or impeach a former client on a subject matter so closely connected with the earlier representation that confidentiality might be involved. *Balda v. Sorchych*, 616 So. 2d 1114, 1115 (Fla. 5th DCA 1993). That is precisely what would occur here. Allowing Defendants' counsel to cross-examine Mr. Wilburn as to the content of their attorney-client communications would be a violation of Florida Rule of Professional Conduct 4-1.9. *See* West's F.S.A. Bar Rule 4-1.9 ("A lawyer who has formerly represented a client in a matter *shall not* thereafter:…(b) use information relating to the representation to the disadvantage of the former

client…") (emphasis added). Such cross-examination would not only distract the jury from the main issues, it may create an ethical conflict that could culminate in the disqualification of Defendants' counsel, thereby delaying the ability to proceed with the litigation.

These are the very concerns that have prompted federal courts to invoke their authority to exclude evidence under Rule 403. *See, e.g., Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3rd Cir. 1992) ("[E]vidence may be excluded when its admission would lead to litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues."); *Coast-to-Coast Stores v. Womack-Bowers, Inc.*, 818 F.2d 1398, 1404 (8th Cir. 1987) (Finding that if collateral evidence were admitted, then rebuttal evidence would also have to be allowed in, thereby confusing the issues and wasting the time of the court and the jury.); *Coursen v. A.H. Robbins Co., Inc.*, 764 F.2d 1329, 1334 (9th Cir. 1985) ("[T]he trial court did not err in excluding…evidence under Fed. R. Evid. 403 on the grounds that such evidence was prejudicial, collateral and potentially confusing."). Similar considerations obtain here.

In sum, any evidence of communications between Mr. Wilburn and Defendants' counsel should be excluded at trial as privileged, irrelevant and unduly prejudicial as well as distracting for the jury.

WHEREFORE, Defendants respectfully request this Court to enter an order precluding Plaintiff from introducing any evidence, offering any explanation, or marking any argument to the jury regarding any attorney-client communications.

## CERTIFICATION OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g), counsel for Defendants hereby certifies that they have conferred with counsel for Plaintiff in a good faith effort to resolve the issues raised by Defendants' Motion in Limine to Exclude Evidence of Attorney-Client Communications, but the parties were unable to reach a resolution.

Respectfully submitted,

/s/Michael J. Furbush
Michael J. Furbush
Florida Bar No. 0070009
Roetzel & Andress, LPA
420 South Orange Avenue
CNL Center II, 7th Floor
Orlando, FL 32801
Telephone:  407-896-2224
Facsimile:  407-835-3596
mfurbush@ralaw.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 14, 2010, I filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to: Stephen O. Cole and Janet Goldberg McEnery, MacFarlane Ferguson & McMullen, P.O. Box 1669, Clearwater, FL 33757; and Daniel L. Palmquist & Jonathon T. Naples, Leonard, Street and Deinard Professional Association, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402.

/s/ Michael J. Furbush
Michael J. Furbush